18771. ORY *v.* TATE.

SUBMITTED OCTOBER 13, 1954—DECIDED NOVEMBER 8, 1954—REHEARING
DENIED DECEMBER 2, 1954.

*George Starr Peck,* for plaintiff in error.

*Harbin M. King,* contra.

ALMAND, Justice. Mrs. Edna F. Tate, as owner and landlord of certain described premises, brought her petition to enjoin Hayward A. Ory, as tenant, from removing from the leased premises brick, metal roofing, and other materials, on the ground that such acts by the defendant constituted waste. On the hearing of an application for an interlocutory injunction, after hearing evidence the court granted the injunction. The case is here to review this order.

The essential facts shown by the evidence introduced on the hearing were undisputed. They are: F. C. Tate, as executor of the will of P. M. Tate, leased to Hayward A. Ory and Paul Rawiszer, a partnership, in 1945 for a term of 5 years, described premises, which lease was assigned to Ory Lumber & Construction Company, Inc. The assignee of the lease took possession of the premises and erected sheds and a brick kiln for the purpose of maintaining and operating a lumber yard, the buildings consisting of sheds in which lumber was stacked. Some of the sheds were covered by tin or galvanized roofing. The brick kiln was used for the purpose of drying lumber. This lease was renewed in 1950 for an additional term of 5 years. Between 1945 and 1953, the exact date not appearing, Mrs. Tate became the owner of the property, and in November, 1953, executed a written lease to H. A. Ory, conveying the property then occupied by Ory Lumber & Construction Company, Inc., as tenant, wherein the named lessee agreed not to commit any waste on the premises, the business then being carried on by the corporation being the same that was carried on under the two former leases, and said corporation was in possession of said property. On the same date that Ory signed the lease, he assigned all of his interest therein to Ory Lumber & Construction Company, Inc., and returned the lease to Mrs. Tate, with the check of the corporation

for $250, which check recited that it was for rent of the plant site for 6 months, and which check was endorsed by Mrs. Tate and paid. In December, 1953, the lumber sheds and brick kiln, while the corporation was in possession of the premises, were destroyed or damaged by fire. After the fire the roofing on the sheds was stacked in piles, and some 10,000 brick were reclaimed and stacked; and when the corporation attempted to remove the brick and roofing from the premises, Mrs. Tate, the lessor, brought her petition for injunction.

There are two questions before us for decision. First, whether or not the loose brick and metal roofing were trade fixtures; and second, if they were trade fixtures, did the tenant have the right to remove them as his property, in view of the fact that the brick kiln and sheds were constructed on the premises during the term of a former lease and prior to the time when the new owner made a new lease to the tenant?

In *Armour & Co.* v. *Block*, 147 *Ga.* 639 (95 S. E. 228), it was held that a smokehouse is a trade fixture and could be removed as such. That case cited authorities from other jurisdictions, which held the following to be trade fixtures: a brick chimney sunk 3 feet in the ground for a foundation; a vault built within a building for banking purposes, and a safe built within the vault which was too large to be removed without tearing down the vault; a stable and storeroom and barn; ovens upon brick foundations; an engine and boiler, the latter encased in a jacket of masonry. Bronson on Fixtures, 186, § 33b, defining a trade fixture, states: "To constitute any chattel that has been attached to the freehold a trade fixture, it is only necessary that it be devoted to what is known in the law of fixtures as a trade purpose, and, as the majority of the courts require, be removable without material injury to the premises, or to the essential characteristics of itself as a chattel." In *Carr* v. *Ga. Railroad Co.*, 74 *Ga.* 73 (2), it was held that a depot building erected by a railroad to aid and assist the company in carrying on its business was a trade fixture and subject to be removed by the tenant before the expiration of his term. In the instant case, the sheds with metal roofing and the brick kiln were erected and used by the tenant in possession for the purpose of carrying on its business, and such items were trade fixtures.

■ The tenant, during his term *or a continuation thereof,* or while he is still in possession under the landlord, may remove trade fixtures erected by him. ·Code § 61-110. It is insisted by counsel for the plaintiff in this case that the tenant cannot remove the trade fixtures for the reason that they were erected on the premises under a prior lease with a different landlord; and that such fixtures are not subject to be removed during the term of a new lease under a new landlord, there being no reservation in the new lease of any right of the tenant to remove these fixtures.

We have found no case decided by this court or the Court of Appeals that has adjudicated this question. The courts of other jurisdictions are divided on the question. One line of authorities has applied what is known as the "forfeiture rule," which is, that, where a tenant erects trade fixtures on the leased premises, he cannot during the existence of a new lease, without an express reservation in the lease, remove trade fixtures erected on the premises during a prior lease, though possession of the tenant be continuous under both leases. Under the line of authorities following the "non-forfeiture" rule, it is held that the tenant has the right to remove the fixtures under such circumstances. The reason given for the "forfeiture" rule is that the tenant's right of removal is a privilege, and does not extend beyond the term for which he had the right of possession under the first lease, and if not removed before the beginning of the term of the new lease, the fixtures are considered as surrendered to the landlord; and the tenant, having made a new lease without expressly reserving the right to remove the fixtures, is estopped to assert that they are trade fixtures. The reason given for support of the "non-forfeiture" rule is that the contrary rule is illogical and contrary to the intention of the parties. The reason supporting the non-forfeiture rule is well stated in Blake-McFall Co. *v.* Wilson, 98 Ore. 626 (193 Pac. 902, 14 A. L. R. 1275), where the court said: "Under this doctrine [the forfeiture rule], if the new lease is silent upon the subject of fixtures installed during the old lease, the tenant loses the fixtures, unless he moves them out of the building before the end of the old lease, notwithstanding the fixtures are his property at the very moment the new lease is executed, and in spite of the fact that he not only does not

intend to abandon them, but supposes that they continue to be his property when the new lease begins, and in spite of the fact that not a single moment of time intervenes giving the landlord the right of possession; but if, however, an hour before the end of the old lease, the tenant loads his fixtures on a truck, and, one minute before the expiration of his old term, carries them around the block, and then, one minute after the beginning of the new term, returns with them and reinstalls them, they continue to be his property with the accompanying right of removal. . . In our view, the reasons which give support to the rule that the failure of a term tenant to remove his fixtures before the expiration of his term and the extinguishment of his right of possession are not present when the old lease is immediately followed by a new lease, and the tenant's possession, actually and rightfully, has been continuous and without interruption; and, since the reasons for the rule do not exist, the rule itself ought not to exist." 14 A. L. R., pp. 1286-87.

For a comprehensive view of both of these rules, see J. C. Springs v. Atlantic Refining Co., 205 N. C. 444 (171 S. E. 635, 110 A. L. R. 474), and annotation of this case in 110 A. L. R. 480.

In our opinion, the non-forfeiture rule is the fair and just one to apply. Neither equity nor law favors forfeitures. Code § 61-110 gives this right of removal "during the term or a continuation thereof." The tenant in the instant case erected the fixtures on the premises during the term of the first lease, for the purpose of carrying on the business of a lumber yard, and at the time the new lease was made in 1953, that same tenant, by assignment of the lease, was in possession of the premises and carrying on the same business, and the tenant's possession had been continuous from the time the fixtures were originally erected on the premises. Though it does not appear just when Mrs. Tate, the new owner, acquired the property, it does appear that she did so during the existence of the first or second lease, and was bound to know that the tenant was using the premises for the same purpose for which they were used during the original lease. The fact that the last lease was made to H. A. Ory individually does not change the character of the relationship between the plaintiff and Ory Lumber & Construction Co., Inc.,

for the reason that it appears without dispute that, on the day that Ory signed the lease in 1953, he assigned the same to the construction company, and Mrs. Tate accepted from that corporation rent for 6 months in advance, with knowledge that the lease had been assigned, and thus recognized Ory Lumber & Construction Company, Inc., as her tenant. *Lawson* v. *Haygood,* 202 *Ga.* 501 (2) (43 S. E. 2d 649); *Warehouses, Inc.* v. *Wetherbee,* 203 *Ga.* 483 (46 S. E. 2d 894); Daly *v.* Simonson, 126 Iowa 716 (102 N. W. 780); Hertzberg *v.* Witte, 22 Tex. Civ. App. 320 (54 S. W. 921); Sassen *v.* Haegle, 125 Minn. 441 (147 N. W. 445).

There being no dispute that the defendant is seeking to remove only articles of personalty which were trade fixtures, and the lessee having the legal right to remove them, it necessarily follows that the court abused its discretion in enjoining the defendant from removing the property that belonged to him, the lessee, and that he had a right to remove, the lease not having terminated and the tenant being in possession of the property.

*Judgment reversed. All the Justices concur.*