A02A0504. SAMS v. VIDEO DISPLAY CORPORATION et al.
(566 SE2d 28)

BLACKBURN, Chief Judge.
In this action regarding the posthumous election to exercise a stock option, Gary M. Sams, in his capacity as administrator of the estate of A. J. Kenerleber (Estate), appeals the trial court's grant of summary judgment to Video Display Corporation (VDC) and its Chief Executive Officer, Ronald D. Ordway, contending that: (1) following Kenerleber's death, the 90-day time period for exercising the stock option was tolled until an administrator had been appointed to represent the Estate; (2) Sams, as administrator of the Estate, had standing to bring a claim against Ordway for negligently misrepresenting the term of the stock option period to Kenerleber's surviving widow and son; (3) a question of fact remains as to whether the Estate should be awarded attorney fees pursuant to OCGA § 13-6-11; and (4) the Estate's motion for summary judgment should have been considered timely filed. For the reasons set forth below, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*[1]
Viewed in this light, the record shows that, on June 28, 1995, Kenerleber entered into a stock option agreement with his employer, VDC. Pursuant to this agreement, Kenerleber had an option to purchase 50,000 shares of VDC stock for $2 per share. Prior to exercising this option, Kenerleber died intestate on May 27, 1998, survived by his widow, a son, and a daughter. Shortly after her hus-

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

band's death, Kenerleber's widow[2] met with Ordway, who mistakenly informed her that her husband's stock option could be exercised at any time within one year of his death.[3] Kenerleber's son also testified that Ordway provided him with the same information.

In actuality, however, Kenerleber's stock plan had a 90-day exercise clause. The agreement provides, in pertinent part:

> Each option shall state the date upon which it is granted. No option shall be exercisable either in whole or in part prior to one (1) year from the date it is granted. Each option shall be exercisable during such period as is provided under the terms of the grant, but in no event shall an option be exercisable after the expiration of ten (10) years from the date of grant. Except as otherwise provided in case of disability or death, no option shall be exercisable after an optionee ceases to be employed by the Company; provided, however, that the Committee shall have the right to extend the exercise period for a period of not in excess of three (3) months following the date of termination of an optionee's employment. . . . If an optionee dies while in the employ of the Company or a subsidiary and shall not have fully exercised options granted pursuant to the Plan, such options may be exercised in whole or in part at any time within three (3) months after the optionee's death, by the executors or administrators of the optionee's estate or by any person or persons who shall have acquired the options directly from the optionee by bequest or inheritance, subject to the condition that no option shall be exercisable after the expiration of ten (10) years from the date it is granted.

Following Kenerleber's death, his beneficiaries began feuding over who should be appointed as representative of the Estate, and, as a result, a representative was not promptly appointed. Less than a year after Kenerleber's death, the beneficiaries finally agreed to have an independent administrator appointed. Sams was appointed to the position on April 14, 1999.

On May 17, 1999, Sams sent a letter to VDC attempting to exercise the stock option. VDC refused to comply, pointing out that the 90-day term for exercising the stock option had expired. Sams subsequently brought this lawsuit, and the trial court granted summary

---

[2] Kenerleber's widow was also an employee of VDC, and she had a stock option plan identical to her husband's plan.

[3] Ordway based his answer on the terms of VDC's most recent stock plan. Kenerleber's option, however, was entered into under a prior plan.

judgment to VDC and Ordway. At the same time, the trial court refused to consider a motion for summary judgment brought by Sams. Sams now appeals these rulings.

1. Sams contends that, prior to the time that he was appointed as administrator of the estate, the 90-day exercise provision of the stock option agreement was tolled pursuant to *Buffalo Ins. Co. v. Steinberg*.[4] We cannot agree.

In *Buffalo Ins.*, the insured under a policy covering fire damage to her property could not be located following a fire.

> The evidence showed that the insured had not been heard from in three or four years at the time of the fire; that the agent who issued the policy reported the fire to the General Adjustment Bureau, Inc., which was designated by the insurer to handle their losses; that the agent was not able to locate the insured; that the insurer refused to settle the loss until the insured was located; and that the policy was in full force at the time of the fire.

Id. at 368. The insurance policy provided that proof of loss had to be filed within 60 days after the loss occurred and any suit regarding the loss had to be brought within 12 months.

At the time of the loss, the property was mortgaged, and the mortgagee, who had rights to the insurance proceeds, contacted an agent of the insurance company, who told the mortgagee: "You keep on trying to find [the insured] and when you find her, get her to sign the Proof of Loss and let us know so that we can make our vouchers payable to you and [the insured]." Sometime later, the insured, who was never found, was declared dead, and the mortgagee was appointed as conservator of her estate. The mortgagee then brought suit against the insurance company for the proceeds, but the insurance company maintained that it was not liable because the suit had not been brought within one year from the date of the loss.

On these facts, we held:

> While admittedly the contractual period limiting the bringing of an action is valid, it must not be held to be unconscionably inflexible. Accordingly, where, as here, there was no one competent to bring the action for the insured until appointment by the court, the limitation may be found by the jury to have been postponed for the period required to accomplish the appointment, plus a reasonable period in which to bring the suit. To hold otherwise would violate the

---

[4] *Buffalo Ins. Co. v. Steinberg*, 105 Ga. App. 366 (124 SE2d 681) (1962).

long established precept of the law that forfeitures are not to be favored against innocent and helpless victims of unfortunate circumstances. Under the factual situation of the present case, we hold that the bringing of the action by the conservator of the estate of the insured was not barred, as a matter of law, by the twelve-month provision for bringing the action on the policy of insurance nor by the failure to file proof of loss within sixty days after the loss. The circumstances could be found by the jury to show reasonable diligence in efforts to locate the insured, after which the plaintiff was appointed her conservator and he thereupon, without unreasonable delay, filed proofs of loss, demand upon the company, and then brought the action to recover under the policy.

*Buffalo Ins.*, supra at 372 (1).

Even if we were to accept Sams' argument that this case applies to the forfeiture of rights under contracts generally, not just insurance contracts, it would not support Sams' case. As pointed out in *Buffalo Ins.*, the rule of law developed therein was designed to help innocent and helpless victims who, through no fault of their own, were unable to comply with the terms of the contract *by any means*. That is not the situation here. It is undisputed that the beneficiaries of the Estate had access to the stock agreement plan. In fact, Kenerleber's widow was an optionee under the very same plan. Had the beneficiaries merely read it, they would have realized that the stock option was set to terminate three months after Kenerleber's death. Rather than preventing any administrator from being appointed due to their familial quarrels, the beneficiaries could have requested a temporary administrator for the purpose of exercising the option. They chose not to do so.

Unlike the mortgagee in *Buffalo Ins.*, the beneficiaries here were neither innocent nor helpless. At all times, they had the power to uncover the information which would have obviated the problems about which they now complain. As such, it cannot be said that the failure to exercise the option in this case was not due to any neglect on the part of the beneficiary. *Pilgrim Health &c. Ins. Co. v. Chism.*[5]

2. Sams contends that, as administrator of the Estate, he had standing to bring a claim against Ordway for giving mistaken information to Kenerleber's widow and son about the termination provision of the stock option agreement. We disagree.

---

[5] *Pilgrim Health &c. Ins. Co. v. Chism*, 49 Ga. App. 121, hn. 2, 123 (174 SE 212) (1934).

It is undisputed that, at the time that these misrepresentations were made, Sams had not been appointed administrator of the Estate. The misrepresentations were made solely to Kenerleber's widow and, allegedly, his son. Neither the widow nor the son was the representative of the Estate. In addition, Sams testified that at no time were these misrepresentations ever made to him. Based on these facts, the trial court properly concluded that Sams lacked standing to bring a negligent misrepresentation claim against Ordway. See, e.g., *Skipper Sams, Inc. v. Roswell-Holcomb Assoc.*[6]

Sams' argument that this ruling allows individuals to lie with immunity to beneficiaries prior to appointment of an estate representative with immunity is groundless. Although the estate may not have a claim for misrepresentation, the beneficiary may still be able to bring suit in his or her own right.

3. Sams contends that the trial court erred by finding, on summary judgment, that the Estate was not entitled to attorney fees pursuant to OCGA § 13-6-11 as a matter of law. OCGA § 13-6-11 provides: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." As the trial court found, there is no evidence in this case that VDC or Ordway has acted in such a way subjecting them to OCGA § 13-6-11. As set forth in the analysis above, it is clear that an actual, justiciable controversy existed in this case. The trial court correctly granted summary judgment to VDC and Ordway on this issue.

4. Finally, Sams argues that the trial court improperly refused to consider the Estate's motion for partial summary judgment. The only issue raised in that motion regarded whether the stock option termination provision was tolled prior to the appointment of an administrator for the Estate. Pursuant to our holding in Division 1, this enumeration of error has been rendered moot.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED MAY 8, 2002 —
RECONSIDERATION DENIED MAY 22, 2002 —

---

[6] *Skipper Sams, Inc. v. Roswell-Holcomb Assoc.*, 247 Ga. App. 237 (543 SE2d 765) (2000).

*Craig M. Frankel*, for appellant.
*Gary P. Bunch*, for appellees.