A05A1338. LAY BROTHERS, INC. v. GOLDEN PANTRY FOOD STORES, INC.

(616 SE2d 160)

JOHNSON, Presiding Judge.

Lay Brothers, Inc. appeals the trial court's grant of partial summary judgment to Golden Pantry Food Stores, Inc. We affirm for the reasons set forth below.

This case was previously before this court in *Golden Pantry Food Stores v. Lay Bros., Inc.*,[1] in which Golden Pantry appealed the trial court's judgment, entered on a jury verdict, in favor of Lay Brothers. As we explained, this suit arose

following the expiration of a lease between Golden Pantry, as lessee, and Harold and Edwina Lay, as lessors. Lay Brothers, Inc., asserts that, through an assignment, it is the successor in interest to Harold and Edwina Lay and is thus authorized to bring this action. Lay Brothers and Golden Pantry are business competitors in the business of convenience stores.

The Lays leased the premises to Golden Pantry to operate a convenience store for ten years, plus a five year

[1] 266 Ga. App. 645 (597 SE2d 659) (2004).

extension. At the end of that period Golden Pantry was to vacate the premises and remove its trade fixtures. After this was done, inspection of the premises under current environmental rules revealed some fuel contamination on the site and damage to the premises.

After the term of the lease, Lay Brothers acquired the premises and began preparations to operate its own gasoline station and convenience store on the site. Even though Golden Pantry's lease ended in October 1998 and Lay Brothers wanted to take possession on November 1, 1998, Lay Brothers could not start operation of the convenience store until August 1999.

Because Golden Pantry allegedly did not surrender the premises on time and in proper condition, Lay Brothers filed this action contending that Golden Pantry (1) failed to surrender the premises within a reasonable time after the termination of the lease, (2) removed improvements that should have remained on the premises, (3) failed to repair damage to the premises caused by its removal of trade fixtures, (4) failed to turn over the premises in as good a condition as when the premises was leased, and (5) thus breached the lease. Lay Brothers also contended that it was entitled to an award of attorney fees and expenses of litigation under OCGA § 13-6-11.[2]

We reversed the judgment and remanded the case because the trial court erred in denying Golden Pantry's motion for directed verdict on lost profit damages.[3] We also provided that, if raised during further proceedings, the trial court should consider "in accordance with our time-honored principles of contract construction," the validity of the lease assignment and whether under the terms of the lease Golden Pantry was entitled to remove a canopy from the premises.[4]

On remand, Golden Pantry renewed its motion for summary judgment, which the trial court granted in part. Lay Brothers contends the trial court erred in finding (i) the canopy was a trade fixture as a matter of law and the parties intended to treat the canopy as a trade fixture in unambiguous language, (ii) Lay Brothers was limited to nominal damages on its claim for damage to the leased premises, and (iii) Lay Brothers could not recover attorney fees. We disagree.

[2] Id. at 645-646.
[3] Id. at 647.
[4] Id. at 650-651 (2).

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law.[5] Our review is de novo.[6]

1. At issue is whether Golden Pantry breached the lease by removing a canopy which Golden Pantry had installed on the premises to provide shelter over the gasoline pumps. Evidence showed the canopy was secured by four columns bolted to concrete footers set in the ground.

The trial court found the lease unambiguously provided that Golden Pantry could remove trade fixtures from the premises on or within a reasonable time after the end of the lease term. Lay Brothers contends the trial court failed to consider whether the lease's provision that structures and improvements are to become property of the lessor conflicts with the provision that trade fixtures may be removed by Golden Pantry, and the lease is therefore ambiguous. "The cardinal rule of contract construction is to ascertain the intention of the parties. To this end the whole instrument, together with its circumstances, must be considered."[7]

> Where no matter of fact is involved, the construction of a plain and definite contract, if needed, is a matter of law for the court; a contract is not ambiguous, even though difficult to construe, unless and until an application of pertinent rules of interpretation leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties.[8]

Section 13.1 of the lease provides that upon its termination Golden Pantry will surrender to the lessor all buildings, structures, and improvements located thereon; however, this provision also states that trade fixtures do not become part of the premises and may be removed by Golden Pantry at any time or within a reasonable time after the end of the lease term. There is no ambiguity because Golden Pantry's right to remove trade fixtures is the specific exception to the general rule that buildings, structures, and other improvements will remain the property of the lessor on lease termination. "Under general rules of contract construction, a limited or specific provision

---

[5] OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[6] *Walker v. Virtual Packaging*, 229 Ga. App. 124 (493 SE2d 551) (1997).

[7] (Citation and punctuation omitted.) *Bradley v. Frank*, 264 Ga. App. 772, 773 (1) (592 SE2d 138) (2003).

[8] (Citation omitted.) *Golden Pantry*, supra, 266 Ga. App. at 650-651 (2).

will prevail over one that is more broadly inclusive."[9] Accordingly, the trial court did not err in concluding that the lease unambiguously provides that Golden Pantry may remove trade fixtures from the premises.

Lay Brothers also contends that the trial court erred in finding the canopy to be a trade fixture as a matter of law. We disagree.

In determining the parties' intent as to the meaning of "trade fixture," the trial court turned to the judicial construction of the term, as it was authorized to do. "The laws which exist at the time and place of the making of a contract, enter into and form a part of it; and the parties must be presumed to have contracted with reference to such laws and their effect on the subject matter."[10] In Georgia, trade fixtures are defined as articles annexed to the realty by a tenant for the purpose of carrying on a trade.[11] Even though a structure may be large and attached to the premises, it will nevertheless be considered a trade fixture if the tenant installed the structure for purposes of carrying on its business.[12] As it is undisputed that Golden Pantry installed the canopy for purposes of carrying on its trade at the leased premises, the trial court did not err in concluding that the canopy was a trade fixture as a matter of law, and that its removal by Golden Pantry did not violate the terms of the lease.

Finally, Lay Brothers also argues the trial court did not properly consider Section 4.4 of the lease in interpreting the parties' intent. Again, we disagree.

Section 4.4 provides that Golden Pantry may demolish any and all improvements on the premises and "construct new buildings in place thereof." As allowed by Section 4.4, Golden Pantry demolished the improvements on the premises at the beginning of the lease term and built its own building in its place. Lay Brothers argues the parties intended that all the improvements replaced by Golden Pantry pursuant to Section 4.4 would be surrendered at the end of the lease term, but this is not provided by terms of the lease. Lay Brothers further contends that under the trial court's interpretation of the term trade fixtures, Golden Pantry could have removed everything it built, rendering meaningless its obligation to surrender buildings, structures, and other improvements on lease termination.

---

[9] (Citation omitted.) *Broome v. Allstate Ins. Co.*, 144 Ga. App. 318, 319 (241 SE2d 34) (1977).

[10] (Citations and punctuation omitted.) *Magnetic Resonance Plus v. Imaging Systems Intl.*, 273 Ga. 525, 527 (2) (543 SE2d 32) (2001).

[11] *Chouinard v. Leah Enterprises*, 205 Ga. App. 206, 207 (1) (422 SE2d 204) (1992).

[12] *Armour & Co. v. Block*, 147 Ga. 639, 645 (95 SE 228) (1918) (smokehouse erected by tenant and attached to the main warehouse was a trade fixture). See also *Ory v. Tate*, 211 Ga. 256, 258 (1) (85 SE2d 36) (1954) (shed built by tenant was a trade fixture).

"The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part."[13] Golden Pantry did surrender the building it constructed on the property, and the question is not whether Golden Pantry could remove the building, but the canopy. We conclude the trial court's application of the traditional meaning of the term "trade fixtures" was consistent with the lease as a whole, including Sections 4.4 and 13.1.

2. Lay Brothers further claims the trial court erred in finding Lay Brothers was limited to nominal damages on its claim for damages to the leased premises. We disagree.

In its motion for summary judgment, Golden Pantry contended that Lay Brothers had not produced any evidence of a recoverable measure of damages. For purposes of its damage claims, Lay Brothers stood in the shoes of the original lessor, whose "damages would be those which would have placed her in the position she would have been in had Golden Pantry vacated the premises in accordance with the lease."[14] The trial court applied this measure of damages and determined that Lay Brothers had not produced sufficient evidence of damages to avoid summary judgment, pointing to Lay Brothers' president's testimony that "I'm not exactly sure what the total cost figures were . . . ," "I don't know exactly what the cost figures are in my head right now," and his subsequently characterized "guesstimation" of damages to the premises.

"The party claiming damages carries not only the burden of proving the damages, but also furnishing the jury with sufficient data to estimate the damages with reasonable certainty."[15] "Damages growing out of a breach of contract must be such as could be traced solely to breach, be capable of exact computation, must have arisen according to the usual course of things, and be such as the parties contemplated as a probable result of such breach."[16]

Faced with Golden Pantry's showing of the absence of evidence as to the amount of damages, it was incumbent upon Lay Brothers to come forward with evidence as to this element of their case, but they failed to do so.

> A defendant who will not bear the burden of proof at trial
> need not affirmatively disprove the nonmoving party's case;

---

[13] OCGA § 13-2-2 (4).

[14] *Golden Pantry*, supra at 649 (1).

[15] (Citation and punctuation omitted.) *Walton v. Datry*, 185 Ga. App. 88, 95 (5) (b) (363 SE2d 295) (1987).

[16] (Punctuation omitted.) *Bauer v. North Fulton Med. Center*, 241 Ga. App. 568, 572 (3) (b) (527 SE2d 240) (1999).

instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[17]

Rather than point to specific evidence giving rise to a triable issue, Lay Brothers argued below and on appeal that a ruling on the damage issue was premature. Their specific argument on appeal is that the grant of summary judgment was premature because the trial court had not ruled on the validity of the lease assignment in accordance with the general rules of contract construction as instructed by this court in *Golden Pantry*.[18] However, on the same day it entered its order on summary judgment, the trial court, in a separate order, ruled that the assignment was invalid, and ordered Lay Brothers to amend its complaint to substitute the real parties in interest. Lay Brothers has not appealed this order, and, in any case, the trial court's conclusions as to the assignment and the real parties in interest was not a basis for its grant of Golden Pantry's motion for summary judgment.[19] Accordingly, this argument has no merit.

Where evidence as to the amount of damages is merely speculative, summary judgment is appropriate.[20] Given that Lay Brothers showed evidence of damage to the premises, but only speculation as to the amount of such damages, the trial court did not err in restricting Lay Brothers' recovery to nominal damages.[21]

3. Lay Brothers claims the trial court erred in granting summary judgment to Golden Pantry on its claim for attorney fees because issues of bad faith remain as to the underlying transaction.[22] We

---

[17] *Lau's Corp.*, supra, 261 Ga. at 491.

[18] See *Golden Pantry*, supra at 650 (2).

[19] See *Warshaw Properties v. Lackey*, 170 Ga. App. 101, 101-102 (316 SE2d 482) (1984) (defense based on real party in interest is a matter in abatement and not a proper basis for summary judgment, which goes to the merits of the action).

[20] See *McCumbers v. Westside Assoc.*, 214 Ga. App. 149, 149-150 (447 SE2d 331) (1994). Accord *Excavation +, Inc. v. Candler*, 209 Ga. App. 351, 352-353 (433 SE2d 340) (1993); *Walton*, supra at 95 (5) (b).

[21] See, e.g., *Crawford & Assoc. v. Groves-Keen, Inc.*, 127 Ga. App. 646, 650 (1) (194 SE2d 499) (1972) (if the plaintiff fails to show sufficient data to enable the jury, with a reasonable degree of certainty, to estimate the actual damages, then his recovery will be restricted to nominal damages). See also OCGA § 13-6-6 (injured party has a right to damages for breach of contract, but if there has been no actual damage, the injured party may recover nominal damages).

[22] Lay Brothers did not contend in its appellate brief that Golden Pantry was stubbornly litigious or caused it unnecessary expense. See OCGA § 13-6-11.

disagree. In this context, "the element of bad faith that will support a claim for litigation expenses under OCGA § 13-6-11 must relate to the acts in the transaction itself prior to the litigation, not to the conduct during or motive with which a party proceeds in the litigation."[23] Golden Pantry contended in its motion for summary judgment, and the trial court found, that Lay Brothers presented no evidence showing that Golden Pantry took any action in bad faith which caused Lay Brothers' injury. Lay Brothers has failed to point to any evidence of record that would support a finding that Golden Pantry acted in bad faith.[24] Accordingly, the trial court did not err in granting summary judgment to Golden Pantry on Lay Brothers' claim for attorney fees.[25]

*Judgment affirmed. Ruffin, C. J., and Barnes, J., concur.*

DECIDED JUNE 22, 2005.

*J. Hue Henry*, for appellant.
*Prior & Daniel, Michael C. Daniel*, for appellee.

---

[23] (Footnote omitted.) *Fresh Floors, Inc. v. Forrest Cambridge Apts.*, 257 Ga. App. 270, 271 (570 SE2d 590) (2002).

[24] See *Bank South, N.A. v. Harrell*, 181 Ga. App. 64, 67-68 (3) (351 SE2d 263) (1986) (physical precedent only) (where record was devoid of evidence of bad faith in making of contract at issue, and defense was reasonable as a matter of law, trial court erred in failing to direct verdict to defendant on issue of attorney fees).

[25] See *Sams v. Video Display Corp.*, 255 Ga. App. 478, 482 (3) (566 SE2d 28) (2002) (where there was no evidence defendants acted in a way to subject them to attorney fees under OCGA § 13-6-11, trial court correctly granted summary judgment to defendants on that claim).