A06A0796. KING v. CHISM et al.
(632 SE2d 463)

MIKELL, Judge.

E. Howard King, Jr., brought an action against Richard Chism, Chattahoochee Chase Condominium Association, Inc., Community

---

Management Associates, Inc., GW & Associates, Inc., and Mitzi Vallely (collectively referred to herein as the "Association"), alleging that they unlawfully towed his vehicle from the common areas of the Chattahoochee Chase Condominium complex (the "Complex"), which constituted the unlawful deprivation of and wrongful interference with his property, trespass, and theft, and that they acted in bad faith. The trial court granted the Association's motion for summary judgment on all of King's claims, from which he appeals.

> Summary judgment is appropriate when the court, viewing all the evidence and drawing reasonable inferences in a light most favorable to the non-movant, concludes that the evidence does not create a triable issue as to each essential element of the case. The burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[1]

So viewed, the record shows that in either 1999 or 2000, King permanently parked his 1979 green Cadillac Seville in the common parking area of the Complex. At that time, the vehicle's registration was not current, its tag had expired, and King no longer maintained insurance on the vehicle. From that point forward, King could not crank the vehicle because the battery was dead. King testified that in 1998 or 1999, when he periodically parked his car in the common area, a new property manager placed a warning sticker on the vehicle that indicated it was going to be towed; that when he threatened legal proceedings, no further action followed; that in early December 2002, another sticker was placed on the vehicle, indicating that it would be towed on December 17; that he removed the sticker, and that he did not contact anyone at the Association in reference thereto. On January 2, 2003, the car was towed from the complex.

King filed suit on the grounds that the Association did not have authority to remove his vehicle from the premises. The Association moved for summary judgment, which the trial court granted. On appeal, King argues that the trial court erred in granting summary judgment because (1) the Association did not have authority to

---

[1] (Citations and punctuation omitted.) *Atlanta Georgetown Condo. Assn. v. Chaplin,* 235 Ga. App. 460-461 (509 SE2d 729) (1998), quoting *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991).

promulgate a rule resulting in the confiscation of his car; (2) the Association did not comply with the due process requirements set forth in its bylaws; and (3) there were genuine issues of fact remaining as to whether the Association's enforcement of the rule was arbitrary and capricious. Based on the following, we affirm.

1. King argues that the Association did not have authority to create a rule that permitted it to remove vehicles from the Complex common areas. We disagree.

Pursuant to OCGA § 44-3-76, which is a part of the Georgia Condominium Act (the "Act"),[2]

> [e]very unit owner and all those entitled to occupy a unit shall comply with all lawful provisions of the condominium instruments. In addition, any unit owner and all those entitled to occupy a unit shall comply with any reasonable rules or regulations adopted by the association pursuant to the condominium instruments which have been provided to the unit owners and with the lawful provisions of bylaws of the association.[3]

OCGA § 44-3-71 (8) defines "condominium instruments" as the declaration and plats and plans recorded pursuant to the Act. This court has previously viewed the relationship between condominium associations and condominium owners/members "as a contractual one, and the condominium instruments as analogous to an 'express contract' between the unit owners/members and the condominium association."[4]

> The condominium instruments, including the bylaws and the sales agreement, are a contract that governs the legal rights between the Association and unit owners. The condominium bylaws represent a form of private law making, in which individual owners come together and agree to subordinate some of their traditional individual ownership rights and privileges when they choose this type of ownership experience. As such, these documents should be strictly construed as they are written, giving the language its clear, simple, and unambiguous meaning.[5]

---

[2] OCGA § 44-3-70 et seq.

[3] OCGA § 44-3-76.

[4] (Footnote omitted.) *Bradford Square Condo. Assn. v. Miller*, 258 Ga. App. 240, 245 (1) (a) (573 SE2d 405) (2002).

[5] (Footnote omitted.) Id.

In the instant case, the Declaration states that "[t]he owners and occupants shall comply strictly with the Declaration, the By-Laws, and the rules and regulations contained in or promulgated in accordance with the Declaration or By-Laws." In the section of the bylaws pertaining to the powers and duties of the board of directors of the Association, it states:

> The Board of Directors shall manage the affairs of the Association and shall have all the powers and duties necessary for the administration of the condominium. . . . The Board shall have the power to adopt such rules and regulations as it deems necessary and appropriate and to impose sanctions for violations thereof, including without limitation, monetary fines.

Therefore, the Declaration itself contemplates the creation of rules and regulations in accordance with the Declaration or bylaws and that owners shall comply with these rules. Furthermore, OCGA § 44-3-76 requires that unit owners comply with the Association's rules and regulations.

The Association's rules and regulations included several sections related to vehicles on the property. Pertinent to this case are the following sections:

> 6. Vehicles parked in the complex must be conventional, full bodied vehicles in good repair. . . . 9. Vehicles subject to governmental inspection and/or licensing must have current tags and stickers. . . . 11. Any violation of the vehicle rules can be cause for towing. Warning card will be put on vehicle and written notice given to owner if known, however warning card is sufficient notice and vehicle may be towed at any time thereafter, at owners expense.[6]

Therefore, King's argument that the Association was not authorized to enact the rules that led to the towing of his vehicle fails.

2. Next, King argues that the Association could not tow his car without complying with the due process rules provided in the bylaws. In support of his argument, King refers us to Article VIII, Section 2 of

---

[6] In King's affidavit, he attaches three different versions of the rules and regulations of the Association. This quotation is taken from the rules and regulations that King states were in effect when his vehicle was towed. The pertinent parts of subsequent revisions that King provides are essentially the same as the version that he contends was in effect at the relevant time.

the bylaws, which appears to govern the procedure for use restrictions and rule making and provides, in pertinent part:

> The Board shall not impose a fine, suspend a member's right to vote or infringe upon any other rights of a member or other occupant for violation of rules unless and until the following procedure is followed: (a) *Demand.* Written demand to discontinue an alleged violation shall be served upon the alleged violator. . . . (b) *Notice.* Within three months of such demand, if the violation continues . . . , the Board shall serve the violator with written notice of a hearing to be held by the Board. . . . (c) *Hearing.* The hearing shall be held pursuant to this notice affording the member a reasonable opportunity to be heard.

King maintains that this section applies to the instant case because by towing his car, the Association infringed upon his rights. However, as stated above, the Association enacted specific rules and regulations pertaining to vehicles parked on the premises, which included notice requirements, of which King had knowledge. "Under general rules of contract construction, a limited or specific provision will prevail over one that is more broadly inclusive."[7] Therefore, the Association's notice requirements in the rules pertaining to vehicles prevail over the more general due process rules. It is undisputed that the Association placed the required notice on King's car on more than one occasion and that King did not move his car. Consequently, the Association was authorized to tow the car, and King's argument that the Association was required to abide by the general due process requirements stated in the bylaws in this instance also fails.

3. Finally, King argues that the trial court's order must be reversed because a genuine issue of fact remained as to whether the Association arbitrarily enforced against him the rule authorizing the removal of his car. Again, we disagree.

When reviewing a condominium association's decisions, "the only judicial issues are whether the exercise of that authority was procedurally fair and reasonable, and whether the substantive decision was made in good faith, and is reasonable and not arbitrary and capricious."[8] Based on the evidence presented here, that King's vehicle was parked in the common area for approximately three years

---

[7] (Punctuation and footnote omitted.) *Lay Bros., Inc. v. Golden Pantry Food Stores*, 273 Ga. App. 870, 872-873 (1) (616 SE2d 160) (2005).

[8] (Punctuation omitted.) *Southland Owners Assn. v. Myles*, 252 Ga. App. 522, 523 (1) (555 SE2d 530) (2001), quoting *Saunders v. Thorn Woode Partnership*, 265 Ga. 703, 704 (2) (462 SE2d 135) (1995).

before it was towed and that he was given notice that it would be towed on more than one occasion, we find no error in the Association's enforcement of its rule.

In *Southland Owners Assn.*,[9] upon which King relies, the homeowner installed a second driveway without obtaining approval to do so.[10] The association informed him that he was still required to obtain an approval, then denied his request for the construction once he submitted it. When the homeowner refused to remove the driveway, the association brought an action against him seeking an injunction.[11] We concluded that the homeowner offered prima facie evidence that the association's denial was procedurally unfair and substantively arbitrary and capricious through his own testimony and his wife's, and through photographs depicting other homes that had similar driveways or that otherwise violated the association's declaration without consequence.[12] Because the association put forth no basis to rebut Myles's defense, we could not conclude that the trial court manifestly abused its discretion when it denied the injunction.[13]

In the instant case, King was required to produce prima facie evidence of selective enforcement.[14] He did not. Instead, King offered his own affidavit as well as the affidavit of David Woodall, who was the property manager for the complex from 1991 to 1999. The affidavits supported King's argument that, during the time that King was a member of the Association's Board of Directors from 1993 through 1999, the rules were never enforced because they were believed to be unenforceable, and that other cars had not been towed even though their conditions violated the rules and regulations. Even if we assume that the rules were not enforced prior to 1999 because the members of the Board at that time thought them to be unenforceable, the result in the instant case does not change. King offered no evidence that another unit owner abandoned a vehicle with an expired tag in the common area for almost three years. This undisputed evidence authorized the Association's decision to remove King's vehicle from the premises after he was given notice in accordance with its rules and regulations. King has not shown that the decision to tow was unreasonable or made in bad faith.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

---

[9] Supra.

[10] Id. at 522.

[11] Id.

[12] Id. at 523-524 (1).

[13] Id. at 524 (1).

[14] See id.

DECIDED JUNE 9, 2006.

*Janet Litt*, for appellant.
*Downey & Cleveland, Joseph C. Parker, Jonathan C. Jones, Weinstock & Scavo, Louis R. Cohan*, for appellees.