A09A0192. MUSEUM TOWER CONDOMINIUM ASSOCIATION, INC. v. THE CHILDREN'S MUSEUM OF ATLANTA, INC.

(676 SE2d 448)

JOHNSON, Presiding Judge.

The Museum Tower Condominium Association, Inc. (the "Association") sued one of its members, the Children's Museum of Atlanta (the "museum"), to resolve a dispute over the museum's monthly association fee. The parties filed cross-motions for summary judgment, and the trial court granted summary judgment to the museum. For reasons that follow, we affirm.

Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law.[1] The undisputed evidence shows that the Museum Tower Condominium is a mixed-use development consisting of two commercial and 167 residential units. The museum owns a ground-floor commercial unit in the development. As a unit owner, the

---

[1] See OCGA § 9-11-56 (c).

museum is a member of the Association and is governed by the development's Declaration of Condominium (the "Declaration").

Under the Declaration, the Association may levy monthly assessments on members to meet the development's common expenses. The term "common expenses" includes payments made to maintain, repair, replace, and operate the development's "common elements," which consist of all property located outside of the actual condominium units. Association members own the common elements as tenants-in-common, and common expenses are generally "assessed against all the Units in accordance with the percentage of undivided interest."

Not all common elements, however, are accessible to every unit owner. The Declaration defines a number of "limited common elements" that are reserved for exclusive use by specified units. For example, Section 6 (a) (i) of the Declaration identifies numerous facilities that may only be used by the development's residential units:

> [T]he lobby, elevators, elevator lobbies, elevator shafts, hallways, corridors, stairs, roof, roof deck, mail area, mechanical rooms, maintenance rooms, fire alarm control system, dumpster, trash chutes, concierge desk, fitness facility, swimming pool, guest suite, business center, conference room, club room which exclusively serve and are exclusively accessed by the Residential Units, and all other Common Elements exclusively serving and exclusively accessed by the Residential Units in the core building . . . are assigned as Limited Common Elements to the Residential Units.

Through 2006, the Association consistently assessed the museum $3,074 in monthly association fees. In the fall of that year, however, the Association determined that this historical assessment did not reflect the museum's 12.64 percent ownership interest in *all* of the condominium's common elements, including the limited common elements assigned exclusively to the residential units. The Association, therefore, increased the museum's monthly assessment for 2007, using the 12.64 percent ownership figure to calculate the new amount and allocate a percentage of all expenses to the museum.

The museum objected to the new assessment, asserting that it had no access to — and no financial responsibility for — the limited common elements assigned to the residential units. When the museum refused to pay the increased sum, the Association brought suit, seeking judicial approval of its recalculation. Both parties then

moved for summary judgment. Concluding that the museum should not be required to pay a percentage of all expenses, the trial court rejected the Association's calculation and granted the museum's motion. We find no error.

Ultimately, this dispute centers on the proper interpretation of the Declaration. The relationship between a condominium association and its members is contractual, and condominium documents such as the Declaration are "analogous to an express contract between the unit owners/members and the condominium association."[2] These documents must be "strictly construed as they are written, giving the language its clear, simple, and unambiguous meaning."[3]

As discussed above, unit owners generally share common expenses according to their ownership interest in the development. This shared liability, however, is not absolute. Addressing expense allocation, Section 8 of the Declaration states:

> (a) *Except as provided below* . . . the amount of all Common Expenses shall be assessed against all the Units in accordance with the percentage of undivided interest in the Common Elements appurtenant to the Unit.
>
> (b) The Board of Directors shall have the power to levy special assessments against Units pursuant to this Paragraph . . . as, in its discretion, it shall deem appropriate.
>
> (i) Any Common Expenses benefiting less than all of the Units or significantly disproportionately benefiting all Units shall be specially assessed equitably among all of the Units which are benefited according to the benefit received. *Any and all expenses associated with the Limited Common Elements . . . shall be specially assessed among all of the Unit or Units to which the Limited Common Element is assigned. . . .*[4]

By the Declaration's clear terms, numerous common elements — including the development's pool, fitness facility, roof deck, mail area, trash facilities, and mechanical rooms — are unavailable to commercial unit owners such as the museum. Nevertheless, the Association seeks to hold the museum responsible for expenses

---

[2] (Citation and punctuation omitted.) *King v. Chism*, 279 Ga. App. 712, 714 (1) (632 SE2d 463) (2006).

[3] (Citation and punctuation omitted.) Id.

[4] (Emphasis supplied.)

relating to these elements. It acknowledges the special assessment provision in Section 8 (b) (i), but argues that Section 8 (b) grants the Association's Board of Directors discretion to determine whether to specially assess such expenses. According to the Association, if the Board elects not to levy a special assessment, the general apportionment language in Section 8 (a) applies, and each owner must pay its proportionate share of the expenses.

We disagree. The cardinal rule of contract construction is to ascertain the parties' intent.[5] To this end, the contract document must be viewed as a whole, and we seek to give meaning to every part of the contract.[6] We must also remember that "a limited or specific provision will prevail over one that is more broadly inclusive."[7]

Read as a whole, the Declaration establishes that common expenses will be shared proportionately by all unit owners. But this broad principle is restricted by the requirement that expenses associated with limited common elements be specially assessed. And although the Board *generally* has discretion in determining when and how to make special assessments, the Declaration narrows that discretion by *mandating* that the Board specially assess limited common element expenses in accordance with Section 8 (b) (i).

The parties intended to remove the limited common element expenses from the general pool of "common expenses" and apportion them specially among the assigned unit owners. To find otherwise would ignore the language of Section 8 (b) (i), elevate a general provision over a specific restriction, and undermine the parties' intent. Accordingly, the trial court properly granted summary judgment to the museum.[8]

*Judgment affirmed. Ellington and Mikell, JJ., concur.*

DECIDED MARCH 26, 2009.

*Weinstock & Scavo, Elizabeth A. Frey*, for appellant.
*Troutman Sanders, Daniel S. Reinhardt*, for appellee.

---

[5] *Lay Bros., Inc. v. Golden Pantry Food Stores*, 273 Ga. App. 870, 872 (1) (616 SE2d 160) (2005).

[6] Id.; OCGA § 13-2-2 (4).

[7] (Citation and punctuation omitted.) *Lay Bros.*, supra at 872-873 (1).

[8] See *King*, supra at 716 (2); *Lay Bros.*, supra at 872-874 (1).