## S01A0630. KREIMER v. KREIMER.
(552 SE2d 826)

SEARS, Presiding Justice.

A discretionary appeal was granted in order to consider whether the trial court erred in its construction of a provision of a divorce settlement agreement obligating the ex-husband to transfer certain "publicly traded stock" to the ex-wife. The trial court construed this provision as referring only to stocks held in the parties' non-retirement accounts, and not to refer to stocks held in the parties' retirement accounts. Having reviewed the record as a whole, as we must, we conclude that the phrase "publicly traded stock," as used in

---

this particular settlement agreement, does apply only to stocks held in non-retirement accounts. Therefore, we affirm.

The divorce action between Stanley and Kathryn Kreimer was scheduled for trial in May 2000. At the calendar call, the trial court requested that the parties attempt to reach a settlement through mediation one final time. As a result, the parties agreed upon a four-page handwritten Memorandum of Settlement ("the Memorandum"). The Memorandum's first paragraph describes the available equity in the marital home, and states that Kathryn would receive the home. The Memorandum's second paragraph states that: "All other assets [will be] divided 50/50," and the paragraph is then broken down into subparagraphs which identify the assets to be divided equally. Subparagraph one specifies a second home; subparagraph two specifies retirement accounts identified as belonging to Stanley; and subparagraph three specifies Kathryn's retirement accounts. Subparagraph four of paragraph two specifies certain "public accounts," including "Fidelity, Dean Witter . . . [and] FUNB." At its conclusion, paragraph two states that: "Wife keeps her retirement — H[usband] transfers publicly traded stock to W[ife] — parties will neutralize tax impact (unrealized capital gains) based on division of publicly traded stock (taking into [account] basis)."

The last page of the Memorandum provides an illustration of how the division and distribution of assets described in paragraph two was intended to take place. That example sets forth how certain assets were to be divided. The difference in the value of those divided assets was to be equalized by Stanley's transfer to Kathryn of certain publicly traded stock, "after equalizing [the] basis and unrealized gains of the publicly traded stock. Division to be by mutual agreement. W[ife] to pay capital gains on shares of stocks when she sells them." This illustration, and the language in paragraph two requiring the parties to "neutralize" the tax impact of stocks transferred, indicates that it was the parties' intention that, regardless of which particular shares of stock were actually transferred by Stanley to Kathryn, after such transfer the parties' holdings would have equal values.

Kathryn's lawyer put the handwritten Memorandum into a formalized form which stated that Stanley was to transfer only stocks held in the "public accounts" identified in paragraph two of the Memorandum — i.e., the non-retirement accounts — to Kathryn. Stanley disputed that provision, and claimed that the terms providing that he would transfer "publicly traded stock" to Kathryn referred to stocks held in both the non-retirement and the retirement accounts. Both parties filed motions to enforce the settlement agreement, and a hearing was held at which the only evidence presented was the settlement agreement itself. The trial court held that the parties

intended the term "publicly traded stock," as used in the Memorandum of Settlement, to refer only to those stocks held in the "public accounts" listed in paragraph two, subparagraph four, of the Memorandum. Accordingly, the trial court ordered Stanley to transfer stocks to Kathryn from the non-retirement accounts, and not from the retirement accounts. Thereafter, Stanley's application seeking a discretionary appeal from that ruling was granted.

1. Settlement agreements in divorce cases must be construed in the same manner and under the same rules as all other contractual agreements.[1] It is axiomatic that contracts must be construed in their entirety and in a manner that permits all of the terms contained therein to be consistent with one another.[2] Of course, the terms and phrases contained in a contract must be given their ordinary meaning.[3] The construction of a particular phrase that will uphold a contract in its entirety is preferred, and the entire contract must be looked at in the construction of any of its parts.[4] A construction of a contract that renders any portion of it meaningless ought to be avoided whenever possible.[5]

Applying these hornbook principles of contract law to the Memorandum of Settlement at issue in this appeal, we conclude that the trial court correctly held that the parties intended the term "publicly traded stocks" to refer only to those stocks held in the non-retirement accounts listed in paragraph two, subparagraph four, of the Memorandum. As explained above, as part of the parties' agreement to divide most of their assets equally, the Memorandum unambiguously requires Stanley to transfer certain "publicly traded stock" to Kathryn. In order to ensure that the post-transfer value of each parties' assets is equal, the Memorandum requires the parties to "equaliz[e the] basis and unrealized gains of the publicly traded stock." Stated differently, the Memorandum mandates that the "parties will neutralize tax impact (unrealized capital gains) based on [a] division of publicly traded stock (taking into [account] basis)." The agreement also requires that Kathryn shall "pay capital gains on [her] shares of stocks when she sells them."

This language concerning the capital gains tax consequences of the stock transfer would have no place in the Memorandum of Settlement if the term "publicly traded stocks" referred to stocks held in retirement accounts, because "capital gains," "basis," and "unrealized gains" are terms that are inapplicable to stocks held in such

---

[1] *Cousins v. Cousins*, 253 Ga. 30, 31 (315 SE2d 420) (1984).
[2] OCGA § 13-2-2 (4).
[3] OCGA § 13-2-2 (2).
[4] OCGA § 13-2-2 (4).
[5] Id.; *Board of Regents v. A.B. & E., Inc.*, 182 Ga. App. 671, 675 (357 SE2d 100) (1987).

accounts. Rather than being taxed at the rates applicable to capital gains, withdrawals from retirement accounts such as those identified in the Memorandum of Settlement are taxed at the rates applicable to ordinary income.[6] Consequently, the basis of any stock held in a retirement account does not affect the tax to be paid on the withdrawal of funds from that account.[7] The language of the Memorandum clearly shows that the parties intended to take into account the capital gains tax consequences of the stock transfer when ensuring that the post-transfer values of the parties' respective assets were equal. Insofar as the only stocks susceptible to capital gains tax treatment are those held in the non-retirement accounts identified in the Memorandum, we conclude that the parties must have intended that stocks be transferred to Kathryn from those non-retirement accounts.

Furthermore, there are substantial monetary penalties for the withdrawal of funds from a retirement account if such withdrawal occurs before the age of fifty nine and one-half years.[8] The Memorandum makes no provision for the impact these penalties would have upon the required division of the parties' assets in separate amounts of equal value. Had the parties intended that assets held in the retirement accounts be included in the "publicly traded stocks" to be transferred to Kathryn, we believe the Memorandum would have necessarily made provisions for the impact of early withdrawal penalties, just as it clearly made provisions for the payment of capital gains taxes upon the sale of stocks held in non-retirement accounts. Therefore, we conclude that the parties did not intend that stocks be transferred from the non-retirement accounts identified in the Memorandum.

Accordingly, in accordance with the principles of contract construction discussed above, we conclude that the trial court correctly ruled that the term "publicly traded stock," as used in the Memorandum of Settlement, refers only to those stocks held in the "public accounts" listed in the Memorandum, and does not refer to those stocks held in the Memorandum's non-retirement accounts.[9]

---

[6] 26 USCA § 408 (d) (1).

[7] See id.

[8] 33A AmJur2d (Federal Taxation – IRAs) §§ 8962, 8872.

[9] Contrary to Stanley's contention, *Byers v. Caldwell*, 273 Ga. 228 (539 SE2d 141) (2000), does not demand a different holding, as that case concerned a trial court's interpretation of its own judgment in a divorce case, a judgment that contained different language than the language of the settlement agreement in this matter. If anything, *Byers* supports our ruling in Division 1 of this matter, as it is based upon many of the same principles of contract construction discussed in Division 1, above. Furthermore, we conclude that the trial court did not, as Stanley contends, err by adding substantive terms to the settlement agreement that were not contemplated by the parties, nor is the trial court's order internally inconsistent.

2. Contrary to Stanley's assertion, the Memorandum of Settlement is not an unenforceable "agreement to agree."[10] As explained in Division 1, the Memorandum includes an example which shows how the parties intended that their division of assets would occur. The illustration states that Stanley would transfer publicly traded stock to Kathryn, "after equalizing [the] basis and unrealized gains of the publicly traded stock. *Division to be by mutual agreement.* W[ife] to pay capital gains on shares of stocks when she sells them."

The italicized language quoted above, providing that the parties are to agree to which stocks will be transferred and which will be retained, does not have the effect of transforming the Memorandum into an unenforceable "agreement to agree." It is well established that "no contract exists until all essential terms have been agreed to, and the failure to agree to even one essential term means that there is no agreement to be enforced."[11] If a contract fails to establish an essential term, and leaves the settling of that term to be agreed upon later by the parties to the contract, the contract is deemed an unenforceable "agreement to agree."[12]

In this matter, Stanley claims that because the Settlement Memorandum provided that the parties were to agree to which shares of stock should be transferred to Kathryn and which should be retained by Stanley, the Memorandum was unenforceable. We disagree. As explained in Division 1 above, the actual makeup of the shares of stock to be transferred is immaterial to the purposes of the Memorandum. Rather, it is the *after-tax valuation* of the stock that is essential. Stated differently, after the stock is transferred, it does not matter whether Stanley holds the parties' stock in Companies A, B and C, or whether Kathryn holds those shares of stock, so long as the after-tax value of both parties' holdings are equal. Hence, the decision which particular shares of stock will actually be transferred is a non-essential element of the settlement agreement, and the fact that the agreement does not identify those shares does not render the agreement void for failing to set forth a material term. It follows that the agreement is not an unenforceable "agreement to agree."

*Judgment affirmed. All the Justices concur, except Carley, J., who concurs in part and dissents in part.*

CARLEY, Justice, concurring in part and dissenting in part.

I concur in Division 1 of the majority opinion, holding that the term "publicly traded stock" refers only to those securities held in the "public accounts" enumerated in the parties' Memorandum of Settle-

---

[10] See *Moss v. Moss*, 265 Ga. 802, 803 (463 SE2d 9) (1995).
[11] Id.
[12] Id.

ment. However, I do not agree with Division 2, wherein the majority concludes that the document is a legally enforceable final agreement. In my opinion, it is only an incomplete "agreement to agree" and, as such, cannot be enforced. Therefore, I dissent to the affirmance of the trial court's order upholding the validity of the Memorandum as a final enforceable contract.

No settlement agreement can exist until *both* parties have agreed on *all* of the *essential* terms, "and the failure to agree to even one essential term means there is 'no agreement to be enforced[.]' [Cit.]" *Reichard v. Reichard*, 262 Ga. 561, 564 (2) (423 SE2d 241) (1992). Although the Memorandum does provide generally for an equal division of the stocks based upon their after-tax value, it does not purport to indicate which specific securities will be retained by Mr. Kreimer and which will be transferred to Ms. Kreimer. The majority summarily discounts this omission by concluding that "the decision which particular shares of stock will actually be transferred is a non-essential element of the settlement agreement. . . ." However, the Memorandum does not simply provide for an indiscriminate equal division of the stocks between the two. It expressly states that the "[d]ivision [is] to be by mutual agreement." Surely, if the parties contemplated that the after-tax valuation of the securities was to be the only essential basis for the division, they would not have further stipulated that who would receive which particular stocks would be decided by a future agreement. Obviously, which of the parties will hold what stocks after the divorce was an important enough factor to them that they made that determination a subject for their subsequent mutual agreement.

In *Moss v. Moss*, 265 Ga. 802 (463 SE2d 9) (1995), this Court unanimously held that the parties' agreement to a transfer of real property of a specified value was unenforceable as a final settlement because the precise method of appraisal was reserved for future agreement. "We cannot agree . . . that the provision regarding the method of appraisal is merely facilitative and is not a substantive term of the agreement. [Cit.]" *Moss v. Moss*, supra at 803. In this case, the parties agreed to the transfer of a specified after-tax value of the stocks, but reserved for their future agreement the determination of which securities would actually be transferred. Unlike the majority, I cannot see any distinction between the failure to specify the method of real estate appraisal in *Moss* and the failure in this case to specify which stocks will be transferred and which will be retained. Just as the various appraisal methods rely upon differing factors to value real estate, the final decision over how best to divide stocks equally may include many factors other than their present after-tax valuation. Despite their current equal values, some stocks, because of their perceived capital growth potential or current and

future dividend yield, may be a more appealing holding for one party than other securities in a portfolio. It appears that, in express recognition of such yet unresolved subjective factors entering into the final selection of securities, the parties reserved their individual right to make a future determination as to that distribution. If they cannot resolve their differences on the impact of such factors and fail to reach a mutual agreement as to the specific division of the stocks, the trial court will not have the authority to make that determination for them, since a

> missing term could not be supplied by the trial court because a divorce "decree should . . . accurately reflect a settlement agreement reached by the parties," ([cit.]), "and a trial court is not authorized to adopt and incorporate into the final decree and judgment of divorce a purported memorialization of the settlement that contains more substantive terms than the settlement." [Cit.]

*Moss v. Moss*, supra at 803. See also *DeGarmo v. DeGarmo*, 269 Ga. 480 (1) (499 SE2d 317) (1998).

The parties themselves did not specify that they were entering into a final settlement agreement. They merely executed a handwritten "Memorandum of Settlement." A "memorandum" is generally defined as "[a]n informal note or instrument embodying something that the parties desire to fix in memory by the aid of written evidence, or that is to serve as the basis of a future formal contract or deed." Black's Law Dictionary, p. 888 (5th ed. 1979). In this document, the parties expressly noted that which stocks would comprise each of their respective half of the after-tax value of the total portfolio remained for their future mutual determination. Therefore, it is clear to me that they did not intend for the Memorandum to constitute the final settlement document, but only to set forth those terms upon which present agreement had been reached and to indicate which terms remained for further resolution. I believe that, under these circumstances, which stocks will be retained and which will be transferred are, as in *Moss*, substantive, rather than merely facilitative, terms. Because the Memorandum contemplates essential terms to be agreed upon in the future, the trial court erred in enforcing the agreement and, consequently, the majority incorrectly affirms the trial court's order.

DECIDED SEPTEMBER 17, 2001 —
RECONSIDERATION DENIED OCTOBER 22, 2001.

*Stanley E. Kreimer, Jr., pro se.*

*Davis, Matthews & Quigley, Elizabeth G. Lindsey, Swertfeger & Wood, L. Jack Swertfeger, Jr., Hugh C. Wood,* for appellee.