A06A0569. KENNEDY v. THE DROUGHTON TRUST et al.
(627 SE2d 887)

ADAMS, Judge.

Mark Kennedy sued The Droughton Trust and David Droughton, trustee for The Droughton Trust (collectively "the Trust"), to compel them to specifically perform a contract for the sale of land owned by the Trust. The trial court granted the Trust's motion for summary judgment and Kennedy appeals. For the reasons set forth below, we reverse.

Summary judgment is proper where the movant demonstrates that "there is no genuine issue of material fact and that the undisputed facts, viewed in a light most favorable to the nonmovant,

warrant judgment as a matter of law." (Footnote omitted.) *SunTrust Bank v. Merritt*, 272 Ga. App. 485, 486 (612 SE2d 818) (2005). This Court reviews the trial court's ruling on the motion for summary judgment de novo. Id.

Viewed in the light most favorable to Kennedy, the evidence shows that on November 10, 2003, Kennedy offered to purchase a vacant lot from the Trust for $64,500 cash using the 2002 Georgia Association of REALTORS form for the purchase of land. The form contract contained the following language with regard to the closing date:

> This transaction *shall be closed on December 10, 2003, or on such other date as may be agreed to by the parties in writing*, provided, however, that: (1) the loan described herein is unable to be closed on or before said date; or (2) Seller fails to satisfy valid title objections, Buyer or Seller may by notice to the other party (which notice must be received on or before the closing date) extend this Agreement's closing date . . . up to seven days from the above-stated closing date.

(Emphasis supplied.) Kennedy left the portion of the contract allowing him to place a time limit for acceptance of his offer blank.

On December 11, 2003, one day after the closing date specified in the contract, the Trust signed the form contract and returned it to Kennedy through its real estate agent. The contract that was returned to Kennedy was marked by hand with an acceptance date of December 11, 2003. The contract also has what appears to be a hand-drawn line though the closing date of December 10, 2003. Droughton testified in his deposition that he did not know whether he marked through the date before the contract was returned to Kennedy or if the line was created when the document was faxed. Kennedy testified that he did not make this mark.

Two or three days after he signed the contract with Kennedy, Droughton received a phone call from another bidder, who expressed surprise that he had been outbid. Although the bidder had indicated in writing that his last bid, which was lower than Kennedy's, was his final offer, the bidder now claimed that he had told Droughton's real estate agent that "under no uncertain terms would he be outbid."

The next day, an employee in the real estate agent's office called Droughton and told him there was a problem with the contract because it was signed the day after the closing date. Droughton then explained to the agent there was another problem, because the other bidder still wanted to buy the property.

Kennedy testified that he notified the Trust in writing that he accepted their offer of December 11, 2003. When Kennedy called the

Trust's real estate agent to schedule the closing date, the agent informed him, "there is some monkey business going on," that he did not want to get into it, and that someone else would be calling him. Kennedy called another person in the real estate agent's office and was told that Droughton was very upset with the agent's performance and wanted to get out of the contract.

On December 16, 2003, Kennedy sent the following letter to the Trust, which the Trust acknowledges receiving:

> This letter is to serve notice to you that the Buyer(s) of [the property] in keeping with the terms of the certain sales contract dated December 11, 2003 are hereby notifying you the Seller that since the closing could not take place on December 10, 2003 for obvious reasons, the Buyer(s) are under the provisions set forth in Section 4, Paragraph C, of the contract notifying you in writing that we are attempting to contact you to schedule and set a new closing date as is our option per the contract. We are notifying you in writing that . . . we request a new closing date of December 18, 2003 or December 22, 2003 at the latest.

> Any communication or other date you may suggest on this matter can be directed to [the closing attorneys specified in the contract].

> Failure to close on this contract or respond to this notice will result in immediate legal action and a claim against the property.

Later that day, Kennedy sent another letter to the Trust, which the Trust also received, scheduling the closing for December 23, 2003. Because the trust received another higher offer after signing the contract on December 11, 2003, Droughton refused to schedule a closing date with Kennedy. Kennedy never received a response from Droughton to his written request to schedule a closing date. There is no evidence the Trust withdrew its December 11, 2003 counteroffer in writing before December 16, 2003.

Droughton acknowledged receiving a copy of the closing papers on December 19, 2003, and also admitted that he told someone in the closing attorney's office that there would not be a closing. Kennedy scheduled a closing for December 23, 2003 with the closing attorneys specified in the contract, and placed the purchase price funds in the closing attorney's escrow account. The Trust did not cooperate or participate in Kennedy's attempted closing.

On December 30, 2003, Droughton signed a contract to sell the property to the other bidder for $75,000. Kennedy filed suit for specific performance of his contract on January 2, 2004. The trial court granted summary judgment to the Trust based on its conclusion that the contract expired by its own terms on December 10, 2003 and that, even if there had been a valid contract, Kennedy could not obtain specific performance because he had failed to prove he tendered the purchase price. Kennedy appeals and asserts that there is a jury question as to the existence of a contract and that the trial court erred when it concluded that he was required to tender the purchase price as a matter of law.

1. We agree with Kennedy's assertion that the parties entered into a valid contract for the sale of the property. The fact that Kennedy's offer was signed the day after the closing date specified in the offer does not support the trial court's conclusion that the contract expired by its own terms. There was no contract in existence before that time that was subject to expiration. Compare *Panfel v. Boyd*, 187 Ga. App. 639, 645-646 (3) (371 SE2d 222) (1988). While the contract language providing for alternative closing dates[1] might provide support for construing the Trust's December 11, 2003 response as an acceptance of Kennedy's offer, thereby forming a contract, we need not decide this issue. Even if we were to construe the Trust's response as a counteroffer, there can be no doubt that Kennedy's December 16, 2003 letter manifested his acceptance of the counteroffer.

The lack of a specific closing date in the contract does not render it too vague and indefinite to be enforced. If a contract does not contain a specific time for performance, it should be construed as requiring performance within a reasonable time.[2] *Read v. GHDC, Inc.*, 254 Ga. 706 (334 SE2d 165) (1985). Kennedy made numerous attempts to schedule the closing within a time period that Droughton acknowledged was reasonable in his deposition. The Trust refused to cooperate, even though "every contract imposes upon each party a duty of good faith and fair dealing in the performance of their respective duties and obligations." (Citation omitted.) *Southwestern Composite Technology Corp. v. Americus-Sumter Payroll Dev. Auth.*, 239 Ga. App. 342, 344 (2) (521 SE2d 378) (1999).

The trial court erred when it granted summary judgment based on its conclusion that a contract between the parties had expired by its own terms.

---

[1] "This transaction shall be closed on December 10, 2003, *or* on such other date as may be agreed to by the parties in writing. . . ." (Emphasis supplied.)

[2] The Trust acknowledged in its brief that it does "not contend that there is a legal requirement for a contract governing the sale of property to contain a closing date."

2. We also find the trial court erred by granting summary judgment, in the alternative, based on its conclusion that Kennedy's claims are barred because he failed to make a proper tender of the purchase price to the Trust.

> It is true that to be entitled to specific performance on a real estate contract, the purchaser must make an unconditional tender of the purchase money due. This tender is excused or waived where the seller, *by conduct* or declaration, proclaims that if a tender should be made, acceptance would be refused. The law does not require a futile tender or other useless act.

(Footnote omitted; emphasis supplied.) *The Phoenix Tower v. Shaffer*, 254 Ga. App. 394, 396 (2) (562 SE2d 788) (2002). In this case, the Trust ignored Kennedy's requests to schedule a closing date and refused to participate in the closing. These facts create, at a minimum, a genuine issue of material fact as to whether Kennedy's tender obligation was excused. See *English v. Muller*, 270 Ga. 876 (1) (514 SE2d 194) (1999) (seller's conduct in ceasing all communication with buyer and refusing to respond to letters from the closing attorney supported trial court's finding in favor of buyer with regard to tender issue).

*Judgment reversed. Blackburn, P. J., and Mikell, J., concur.*

DECIDED MARCH 1, 2006.

*Robert G. Galbaugh*, for appellant.
*Weinstock & Scavo, Louis R. Cohan, Alyson Finkelstein*, for appellees.