### A10A0988. TRIPLE EAGLE ASSOCIATES, INC.
### v. PBK, INC. et al.
(704 SE2d 189)

DILLARD, Judge.

This case concerns the enforceability of a settlement agreement negotiated between counsel to the parties and announced to the trial judge in open court. The trial court held that the material terms of the settlement agreement were vague, indefinite and uncertain, rendering the agreement unenforceable. The trial court also granted the defendants' petition to cancel the notice of lis pendens filed by the plaintiff in connection with the settlement agreement. For the reasons discussed below, we conclude that the settlement agreement was enforceable as a matter of law and reverse the trial court's rulings.

On appeal from a trial court's order on a motion to enforce a settlement agreement, "we apply a de novo standard of review, viewing the evidence in a light most favorable to the nonmoving party."[1] So viewed, the record shows that plaintiff-appellant Triple Eagle Associates, Inc. ("Triple Eagle") entered into an agreement to purchase multiple parcels of unimproved land located in Union County for $28,500,000. The defendants-appellees are a group of companies ("Seller Defendants") that agreed to sell and convey certain parcels of property to Triple Eagle under a purchase agreement.[2] Per the terms of this agreement, Triple Eagle deposited $1,500,000 of earnest money into an escrow account, $500,000 of which was to be used to close on one parcel of the property referred to as the "Frontage Property," and $1,000,000 of which was to be applied to the subsequent closing on the remaining parcels referred to as the "Development Property."

The parties closed on the Frontage Property, but were unable to close on the Development Property. The amended purchase agree-

---

[1] *Matrix Fin. Servs. v. Dean*, 288 Ga. App. 666, 666 (655 SE2d 290) (2007) (citation and punctuation omitted).

[2] The Seller Defendants are PBK, Inc.; Karis Holding, LLC; Queens Valley, LLC; Looking Glass Holdings, LLC; White Bark, LLC; Blasingame Properties One, LLC; and Sparky Holdings, LLC.

18

ment provided that if the closing on the Development Property did not occur by a specific date, title to the Frontage Property would then revert to the Seller Defendants, and that this right of reversion would be the "sole and exclusive remedy . . . as full liquidated damages." When the closing on the Development Property did not occur by the required date, title to the Frontage Property reverted to the Seller Defendants, but the Seller Defendants also requested and received the remaining $1,000,000 in earnest money from the escrow agent (notwithstanding the foregoing remedy limitation).

Triple Eagle demanded that its earnest money be paid back immediately, but the Seller Defendants refused to do so. Triple Eagle then commenced the instant suit, alleging that the Seller Defendants unlawfully retained $1,000,000 in earnest money because the exclusive remedy for the failure to close on the Development Property under the terms of the amended purchase agreement was the right to reversion of title to the Frontage Property. The complaint sought return of the $1,000,000 in earnest money, as well as additional compensatory damages, prejudgment interest and attorney fees. After the Seller Defendants filed their respective answers, Triple Eagle filed a motion for judgment on the pleadings.

When the parties appeared for a hearing on Triple Eagle's motion, counsel announced in open court that a settlement had been reached on "the courthouse steps." The relevant terms of the settlement agreement, as transcribed by the court reporter, are as follows:

[T]he [Seller Defendants] will pay to [Triple Eagle] $1.3 million. That payment will be made upon the sale of the property that is the subject of the action. Until such time as payment is made, four-percent interest will accrue on the indebtedness. The indebtedness will be secured by a second mortgage on the property and this is all of the property that is subject to the action. . . . We will be dismissing the case without prejudice subject to a tolling agreement that would allow the parties to reassert their claims in the event that the property is not able to be marketed within a suitable period of time.

Following this announcement, Triple Eagle made numerous attempts to obtain from the Seller Defendants an executed deed to secure debt,[3] but the Seller Defendants inexplicably refused to

---

[3] The Seller Defendants' prior attorney and counsel for Triple Eagle agreed to the form of a deed to secure debt (drafted by the Seller Defendants' prior attorney), but, notwithstanding this agreement, the deed was never executed and filed.

cooperate or comply with this requirement of the settlement agreement. After three months of "radio silence" from the Seller Defendants, Triple Eagle filed a motion to enforce the settlement agreement and a notice of lis pendens (reflecting the pending litigation over the settlement). Unsurprisingly, the Seller Defendants then hired new counsel, who immediately filed a one-page objection to Triple Eagle's motion to enforce the settlement agreement. Curiously, the Seller Defendants did not file a memorandum providing any argument or citation to legal authority in support of their objection. The Seller Defendants separately filed a petition to cancel the notice of lis pendens.

After holding two hearings to address the matter, the trial court concluded that the settlement agreement was unenforceable and denied Triple Eagle's motion to enforce same. According to the trial court, the settlement agreement was lacking in certainty and definiteness with respect to the time for performance, the terms of payment, and the subject matter of the agreement. Based upon its conclusion that the settlement agreement was unenforceable, the trial court also granted the Seller Defendants' petition to cancel the notice of lis pendens. Triple Eagle now appeals from these rulings.[4]

1. As an initial matter, we note that the Seller Defendants chose not to file a brief on appeal. For this reason, "we accept [Triple Eagle's] statement of facts as prima facie true and decide the case on the basis of this statement and the evidence cited and quoted in support thereof."[5]

2. Triple Eagle contends that the trial court erred in concluding that the settlement agreement was unenforceable for lack of certainty and definiteness. We agree.[6]

An agreement by counsel of the parties to settle a lawsuit pursuant to terms announced in open court can create an enforceable contract.[7] For such a contract to be enforceable, the parties must

---

[4] The trial court's decision to grant the Seller Defendants' petition to cancel the notice of lis pendens is directly appealable under the collateral-order doctrine. *See, e.g., Scroggins v. Edmondson*, 250 Ga. 430, 432 (1) (c) (297 SE2d 469) (1982). As such, the trial court's denial of Triple Eagle's motion to enforce the settlement agreement is subject to appellate review under OCGA § 5-6-34 (d).

[5] *Daniel v. Allstate Ins. Co.*, 290 Ga. App. 898, 900 (1) (660 SE2d 765) (2008) (punctuation and footnote omitted); *see also Clark v. Stafford*, 239 Ga. App. 69, 69 n.1 (522 SE2d 6) (1999) (same); *Jones v. Cooke*, 169 Ga. App. 516, 516 (1) (313 SE2d 773) (1984) (same).

[6] We note in passing that while the Statute of Frauds requires a contract involving the sale or transfer of an interest of land to be in writing, OCGA § 13-5-30 (4), that written requirement does not extend to the settlement agreement pursuant to which the transfer is to be made. *See, e.g., Mason v. Rabun Waste*, 174 Ga. App. 462, 464 (2) (330 SE2d 400) (1985).

[7] *See, e.g., White v. Owens*, 172 Ga. App. 373, 375 (323 SE2d 167) (1984) (upholding enforceability of settlement agreement "read into the record in open court and . . . subsequently incorporated in the judgment," and holding that when an "agreement is made in open court, there is no requirement . . . that it be in writing"); *see also Sanders v. Graves*, 297 Ga.

agree on all material terms,[8] and those terms cannot be incomplete, vague, uncertain or indefinite.[9] In considering whether a contract is unenforceable, however, a trial court must bear in mind that "[t]he law leans against the destruction of contracts on the ground of uncertainty,"[10] and the uncertainty and indefiniteness at issue must be "extreme" to warrant the conclusion that a contract cannot be enforced.[11] As we explained in *Ruskin v. AAF-McQuay, Inc.*:

> It is unnecessary that a contract state definitively and specifically all facts in detail to which the parties may be agreeing, but as to such matters, it will be sufficiently definite and certain if it contains matters which will enable the courts, under proper rules of construction, to ascertain the terms and conditions on which the parties intended to bind themselves.[12]

This is particularly true with respect to settlement agreements, which "are highly favored under the law and will be upheld whenever possible as a means of resolving uncertainties and preventing lawsuits."[13]

With these standards in mind, we will now address each of the trial court's stated reasons for holding that the settlement agreement was unenforceable.

---

App. 779, 779-80 (678 SE2d 220) (2009) (upholding enforceability of settlement agreement reached and transcribed at a deposition).

[8] OCGA § 13-3-2 ("The consent of the parties being essential to a contract, until each has assented to all the terms, there is no binding contract; until assented to, each party may withdraw his bid or proposition.").

[9] *See, e.g., Millwood v. Art Factory*, 306 Ga. App. 164, 166 (702 SE2d 7) (2010) ("The requisites of an explicit contract are a meeting of the minds of the parties, mutuality, and the clear expression of the terms of the agreement."); *Burns v. Dees*, 252 Ga. App. 598, 601-02 (1) (a) (557 SE2d 32) (2001) ("A contract cannot be enforced if its terms are incomplete, vague, indefinite, or uncertain." (citation and punctuation omitted)).

[10] *Milton Frank Allen Publ'ns v. Ga. Ass'n of Petroleum Retailers*, 219 Ga. 665, 672-73 (1) (b) (iii) (135 SE2d 330) (1964) (quoting *Leffler Co. v. Dickerson*, 1 Ga. App. 63 (1) (57 SE 911) (1907)); *Leffler Co.*, 1 Ga. App. at 63 (describing this jurisprudential principle as being "so consonant with common sense, common reason, and common justice, as well as with the unbroken current of the decisions of the courts of all the states in which this question has arisen, that we adopt it without change or alteration").

[11] *Kitchen v. Insuramerica Corp.*, 296 Ga. App. 739, 744 (1) (675 SE2d 598) (2009) (quoting *Fay v. Custom One Homes, LLC*, 276 Ga. App. 188, 190 (622 SE2d 870) (2005) (holding that a contract will only be deemed void on grounds of uncertainty when the "[i]ndefiniteness in subject matter [is] so *extreme* as not to present anything upon which the contract may operate in a definite manner . . . .") (emphasis supplied)); *Kueffer Crane & Hoist Serv. v. Passarella*, 247 Ga. App. 327, 330 (3) (543 SE2d 113) (2000) (same).

[12] 284 Ga. App. 49, 52 (1) (643 SE2d 333) (2007) (citation omitted).

[13] *Sanders*, 297 Ga. App. at 779 (citation omitted); *see also Ruskin*, 284 Ga. App. at 52 (1) ("[W]e generally enforce settlement agreements unless it appears that the parties clearly failed to reach agreement on an essential contract term.").

(a) The trial court first concluded that the settlement agreement was unenforceable because "[t]here [was] no definite time for the enforcement of the agreement." As previously noted, the settlement agreement provides, inter alia, that payment of $1,300,000 by the Seller Defendants is due upon a contingency: "the sale of the property," and that the parties may reassert their underlying substantive claims "in the event that the property is not able to be marketed within a suitable period of time." Based upon the hearing transcripts, the trial court appears to have concluded that the parties' use of the term "marketed" and the phrase "suitable period of time" rendered the duration of the settlement agreement indefinite and uncertain. In so holding, the trial court erred.

In considering this aspect of the trial court's ruling, we begin by considering the term "marketed" and its proper interpretation under the settlement agreement, which is " 'a question of law for the court.' "[14] Here, the term "marketed" was not defined by the parties as part of their settlement agreement, but the ordinary signification of "market" and "marketed" is "to be for sale," "to offer for sale," "the action or business of buying and selling," or "a purchase or sale."[15] And the context of the settlement agreement clearly evinces the parties' intent to not only offer the subject property up for sale, but to actually sell the property in order to fund (in whole or part) the Seller Defendants' settlement payment of $1,300,000 to Triple Eagle:

> The terms by which the matter [has] been resolved are that the defendants will pay to the plaintiff $1.3 million. That payment will be made upon *the sale of the property* that is the subject of the action.[16]

The parties' subsequent use of the term "marketed," then, unquestionably encompasses the word's natural linguistic coupling of offering and selling an item in the marketplace.[17]

Furthermore, even if the parties' use of the term "marketed" were arguably ambiguous,[18] this ambiguity is easily resolved by an

---

[14] *Livoti v. Aycock*, 263 Ga. App. 897, 901-02 (2) (590 SE2d 159) (2003) (quoting *Grier v. Brogdon*, 234 Ga. App. 79, 80 (2) (505 SE2d 512) (1998)).

[15] The Compact Oxford English Dictionary 1038 (2d ed. 1991).

[16] (Emphasis supplied.)

[17] *See, e.g., Verret v. ABB Power T&D Co.*, 237 Ga. App. 492, 493 (1) (515 SE2d 435) (1999) (holding that when the terms of the instrument are plain and unambiguous, the court looks no further to determine the parties' intent).

[18] *Livoti*, 263 Ga. App. at 902 (2) (holding that when an ambiguity is found in the instrument, the court must then apply the rules of contract construction to resolve it, and if the rules of construction cannot resolve the ambiguity, parol evidence may then be introduced to explain the intention of the parties); *Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 660 (2) (516 SE2d 371) (1999) (same).

affidavit from one of Triple Eagle's attorneys (who also announced the terms of settlement in open court), in which he attests that the parties intended for the term "marketed" to mean the ultimate sale of the subject property. The Seller Defendants, having failed to file a brief on appeal, do not contest this averment or direct the Court to any parol evidence that would possibly support a different conclusion. Accordingly, the uncontroverted parol evidence establishes (to the extent necessary) that the parties intended for the term "marketed" to mean the ultimate sale of the subject property.

This brings us to the trial court's conclusion that the phrase "suitable period of time" also renders the settlement agreement indefinite and uncertain. As previously noted, the settlement agreement required the parties to dismiss this civil action without prejudice, "subject to a tolling agreement that would allow the parties to reassert their claims in the event that the property is not able to be marketed within a suitable period of time." Stated another way, the settlement agreement provides that once a "suitable" time has passed for the property to be sold, payment is no longer required from the Seller Defendants, and the parties are then free to reassert their claims against one another. In using the phrase "suitable period of time," the parties did not render the settlement agreement indefinite and uncertain (and thus unenforceable), and the trial court erred in holding otherwise.

Indeed, where no definite time is stated for the performance of a contract, "the presumption is that the parties intended that performance would be had within a reasonable time";[19] and a contract requiring performance within a reasonable time is sufficiently definite to be enforceable.[20] Moreover, because the term "suitable" is synonymous with "reasonable,"[21] the time for the performance of

---

[19] *Barrow County Airport Auth. v. Romanair, Inc.*, 260 Ga. App. 887, 889 (1) (581 SE2d 402) (2003) (quoting *Parker v. Futures Unlimited*, 157 Ga. App. 520, 520-21 (278 SE2d 99) (1981)); *see also Griffith v. Fed. Deposit Ins. Corp.*, 242 Ga. 367, 368 (249 SE2d 54) (1978) ("[A] contract is not invalidated for failure to specify a time within which it is to be performed[;] [i]n such circumstances, a reasonable time will be implied[.]"); *Mansell 400 Assoc. v. Entex Info. Servs.*, 239 Ga. App. 477, 480 (4) (519 SE2d 46) (1999) (same).

[20] *See, e.g., Read v. GHDC, Inc.*, 254 Ga. 706, 706-07 (334 SE2d 165) (1985) (upholding the enforceability of a "contract for purchase and sale" that did not include a "time for performance"); *Kennedy v. Droughton Trust*, 277 Ga. App. 837, 840 (1) (627 SE2d 887) (2006) (same).

[20] *Compare* The Compact Oxford English Dictionary 1521 (2d ed. 1991) (defining "reasonable" as, inter alia, "[a]greeable to reason; not irrational, absurd or ridiculous . . . not going beyond the limit assigned by reason; not extravagant or excessive . . . [o]f such amount, size, number, etc., as is judged to be appropriate or *suitable* to the circumstances or purposes (emphasis supplied)) *with id.* at 1957 (defining "suitable" as, inter alia, "[t]hat is fitted for, adapted or appropriate to . . . a purpose, object, occasion, or the like").

the settlement agreement was neither indefinite nor uncertain, and the trial court erred in holding otherwise.[22]

(b) The trial court further concluded that the settlement agreement was unenforceable for lack of certainty in the terms of payment, reasoning that even if the agreement is construed as requiring the Seller Defendants to pay $1,300,000 upon the sale of the property, "[i]t is unclear whether this settlement amount is payable regardless of the sale price . . . or whether the settlement amount applies only if the sale price covers the $1.3 million plus any outstanding indebtedness." On this basis, the trial court held that the settlement agreement was void, and in doing so erred.

By its plain and unambiguous terms, the settlement agreement does not require a sale of the property at any specific price or place any conditions whatsoever on the $1,300,000 payment (e.g., a certain sales price being obtained by the Seller Defendants). Instead, the agreement simply provides that "[t]he payment will be made upon the sale of the property that is the subject of the action." And where the terms of a written contract are plain and unambiguous, a court must confine itself to the four corners of the document to ascertain the parties' intent,[23] and is not permitted to "strain the construction of [a contract,] so as to discover an ambiguity."[24] Unfortunately, this is exactly what the trial court did by viewing the absence of a specific sales price in the settlement agreement as creating uncertainty and indefiniteness; instead, the court should have concluded that the absence of a specific price meant that no such sales price was required. The trial court's conclusion that the settlement agreement's terms of payment lacked certainty, therefore, was ill-founded.

(c) The trial court also concluded that the settlement agreement was unenforceable because "[t]he extent of the subject matter" was uncertain. Specifically, the court took issue with the parties' use of the phrase "property that is the subject of the action." In doing so, the court appears to have accepted the Seller Defendants' argument

---

[22] The Seller Defendants argued below that the settlement agreement was an unenforceable agreement to reach a future agreement. *See, e.g., Hartrampf v. Citizen & So. Realty Investors*, 157 Ga. App. 879, 881 (1) (278 SE2d 750) (1981) ("An agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto" (citations and punctuation omitted)). We are unpersuaded. The settlement agreement announced in open court reflects that the parties reached a binding agreement as to the material terms of the settlement, which were later to be incorporated into certain written instruments (i.e., the deed to secure debt and tolling agreement) that memorialized the parties' agreed-upon essential terms. *See, e.g., Neely Dev. Corp. v. Serv. First Invs.*, 261 Ga. App. 253, 256-57 (1) (c) (582 SE2d 200) (2003) (upholding enforceability of an agreement requiring the execution of a restrictive covenant).

[23] *See, e.g., Livoti*, 263 Ga. App. at 901-02 (2); *Verret*, 237 Ga. App. at 493 (1).

[24] *State Farm Mut. Auto. Ins. Co. v. Staton*, 286 Ga. 23, 25 (685 SE2d 263) (2009) (citation and punctuation omitted).

below that this phrase referred to all of the parcels of property identified in the amended purchase agreement, which included two parcels owned by third parties not involved in this litigation, and that, on this basis, the settlement agreement was unenforceable. Triple Eagle, however, maintains that the phrase "property that is the subject of the action" refers to the parcels of property owned by the Seller Defendants that are readily identifiable from the descriptions of those parcels in the complaint and the amended purchase agreement (which is attached to the complaint).[25] We agree with Triple Eagle.

A contract is not ambiguous, "even though difficult to construe, unless and until an application of pertinent rules of interpretation leaves it uncertain as to which of two or more possible meanings represents the true intention of the parties."[26] And under the pertinent rules of contract interpretation, "[t]he construction of a particular phrase that will uphold a contract in its entirety is preferred, and the entire contract must be looked at in the construction of any of its parts."[27]

Under the Seller Defendants' interpretation of the phrase "property that is the subject of the action," the settlement agreement would affect property owned by third parties not involved in this litigation by requiring that their parcels also be subject to the second mortgage intended to secure the payment of $1,300,000 by the Seller Defendants to Triple Eagle. And if the settlement agreement were actually construed in this manner, it would render the agreement at least partially unenforceable because the third-party owners would be necessary parties to any attempt to require the placement of a second mortgage on their parcels.[28] In contrast, Triple Eagle's interpretation of the phrase "property that is the subject of the action" as referring only to the parcels owned by the Seller Defendants avoids this enforceability problem altogether. Because Triple Eagle's interpretation of this phrase upholds the settlement agreement in its entirety, the applicable rules of construction lead us to resolve any ambiguity in the agreement in favor of that interpre-

---

[25] *See, e.g., Peachtree Med. Bldg. v. Keel*, 107 Ga. App. 438, 440 (1) (130 SE2d 530) (1963) (noting that "a contract may be made sufficiently certain by reference to other documents").

[26] *Lay Bros. v. Golden Pantry Food Stores*, 273 Ga. App. 870, 872 (1) (616 SE2d 160) (2005) (footnote omitted); *see also Taylor v. Calvary Baptist Temple*, 279 Ga. App. 71, 71-2 (1) (630 SE2d 604) (2006) (same).

[27] *Kreimer v. Kreimer*, 274 Ga. 359, 361 (1) (552 SE2d 826) (2001) (footnote omitted); *see also Lay Bros.*, 273 Ga. App. at 872 (1).

[28] *See, e.g., Little v. King*, 211 Ga. 872, 872 (89 SE2d 511) (1955) (holding that party could not obtain specific performance of contract where necessary party had not been served and made part of the lawsuit).

tation.[29] Accordingly, the trial court erred in concluding that the subject matter of the settlement agreement was indefinite and thus unenforceable.

(d) In concluding that the settlement agreement was too uncertain to be enforceable, the trial court relied on two of this Court's prior decisions, *Key v. Naylor*[30] and *Lemming v. Morgan*.[31] This reliance was misplaced. In *Key*, the duration of the contract and the terms of payment were clearly vague and uncertain. The written employment agreement at issue in *Key* set an initial ten-year term for its duration, but further provided that the employee could "extend her employment indefinitely at her option," and then went on to provide that the agreement was enforceable "even if she was no longer employed by [the company]."[32] As to terms of payment, the agreement defined "salary" as the employee's "current rate with periodic increases," with no indication of timing or manner of calculation of those increases.[33] The terms of the oral partnership contract at issue in *Lemming* were also unquestionably vague and uncertain, obligating the first partner to transfer his one-half interest in certain real property to the second partner "if and when [the first partner's] personal and tax problems subsided."[34] In contrast, payment under the settlement agreement was predicated on the contingency that the property be sold within a "suitable period of time," which, as previously noted, is sufficiently certain and definite to be enforceable.[35]

For the reasons discussed in Division 2 (a)-(d), we conclude that the uncontroverted evidence of record demonstrates that the settlement agreement is not so uncertain or indefinite as to render the agreement unenforceable. Consequently, the trial court committed reversible error by denying Triple Eagle's motion to enforce the settlement agreement against the Seller Defendants.

3. Triple Eagle maintains that the trial court also erred in canceling the notice of lis pendens it filed in connection with the settlement agreement. Again, we agree with Triple Eagle.

The purpose of a lis pendens "is to notify prospective purchasers that the property in question is directly 'involved' in a pending suit, in the sense that the suit seeks some relief respecting that particular

---

[29] *See, e.g., Kreimer*, 274 Ga. at 361 (1); *Lay Bros.*, 273 Ga. App. at 874 (1).

[30] 268 Ga. App. 419, 422-23 (1) (602 SE2d 192) (2004).

[31] 228 Ga. App. 763, 764-65 (1) (492 SE2d 742) (1997).

[32] 268 Ga. App. at 422 (1).

[33] Id. at 423 (1).

[34] 228 Ga. App. at 764 (1) (punctuation omitted).

[35] *See, e.g., Read*, 254 Ga. at 706-07.

property.''[36] Real property is directly ''involved'' in a civil action, for purposes of determining whether a notice of lis pendens was properly filed, if a lien will be imposed on the property as a result of the party who filed the lis pendens ultimately prevailing in the part of the suit under consideration.[37] That is certainly the case here, since enforcement of the settlement agreement includes securing the prospective $1,300,000 payment with a second mortgage on the property of the Seller Defendants. It follows, then, that the trial court erred in canceling the notice of lis pendens filed by Triple Eagle.

4. In light of our holdings in Divisions 2 and 3, Triple Eagle's remaining enumeration of error is moot and need not be addressed.

In sum, the trial court's rulings are reversed, and the case is remanded with instructions to grant Triple Eagle's Motion to Enforce Settlement, to reinstate the Notice of Lis Pendens filed by Triple Eagle, and to hold a hearing on Triple Eagle's Motion for Attorney Fees.

*Judgment reversed and case remanded with direction. Barnes, P. J., and Blackwell, J., concur.*

DECIDED NOVEMBER 23, 2010.

*Ichter & Thomas, Cary Ichter, S. Renee Huskey*, for appellant.
*Ann M. Vaughan, Kenya L. Patton, Jack C. Lance, Jr.*, for appellees.

---

[36] *Evans v. Fulton Nat'l Mtg. Corp.*, 168 Ga. App. 600, 601 (309 SE2d 884) (1983) (citation and punctuation omitted); *see also Boca Petroco v. Petroleum Realty II*, 285 Ga. 487, 488 (678 SE2d 330) (2009).

[37] *See Scroggins*, 250 Ga. at 433 (2).