[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-13744
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-02586-HTW

GE COMMERCIAL DISTRIBUTION
FINANCE CORPORATION,
d.b.a. Capital Solutions for the
Home Products Industry,

Plaintiff - Appellee,

versus

HOWARD BALL,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____
(July 13, 2012)

Before TJOFLAT, EDMONDSON and ANDERSON, Circuit Judges.

PER CURIAM:

Howard Ball appeals the confirmation of a binding arbitration award and the

denial of a motion to enforce an alleged settlement between GE Commercial

Division Finance Corporation ("GECDF") and Ball.  On appeal, Ball contends that

he accepted GECDF's settlement offer in a Stay Agreement, but GECDF then

repudiated it.  Ball also argues he and GECDF have a binding settlement

agreement to negotiate the forbearance of the execution and collection of any

judgment.

According to the applicable Georgia law, "[t]o constitute a valid contract,

there must be parties able to contract, a consideration moving to the contract, the

assent of the parties to the terms of the contract, and a subject matter upon which

the contract can operate."  O.C.G.A. § 13-3-1  (2011).  "The consent of the parties

being essential to a contract, until each has assented to all the terms, there is no

binding contract; until assented to, each party may withdraw his bid or

proposition."  O.C.G.A. § 13-3-2  (2011).

> A district court's determination regarding the existence of a valid contract
> will not be set aside unless clearly erroneous.  The clearly erroneous
> standard of review applies to both subsidiary and ultimate facts.
> Concerning the existence of a contract, this court has recognized that it is
> logical for the reviewing court to treat ultimate facts as matters of law that it
> may determine independently.

Devlin v. Ingrum, 928 F.2d 1084, 1090 (11th Cir. 1991) (citations and quotations

omitted).

2

Ball first argues that he and GECDF both assented to the terms of the Stay Agreement and that GECDF repudiated it. This argument was not raised below and thus is waived.  See BUC Int'l Corp. v. Int'l Yacht Council Ltd., 489 F.3d 1129, 1140 (11th Cir. 2007) ("As a general rule, we do not consider issues not presented in the first instance to the trial court.").  However, even considering the merits, we easily find that there was no enforceable agreement here because GECDF withdrew the Stay Agreement almost two weeks before Ball tried to accept it.[1]  This was too late to create a contract because, "until assented to, each party may withdraw his bid or proposition."  O.C.G.A. § 13-3-2.

Ball next argues that he and GECDF entered into a binding agreement to negotiate the forbearance of the arbitration judgment, as described in a July 29, 2010, email from GECDF's counsel to Ball's counsel.  We agree with the district court that Ball never assented to the terms of an enforceable settlement agreement.  GECDF merely stated it was willing to "negotiate some type of forbearance of the

---

[1]    GECDF's counsel sent the Stay Agreement to Ball's counsel on June 24, 2010, then emailed Ball's counsel on July 7, 2010, to indicate that GECDF had changed its mind and had decided to confirm the arbitration award.  On July 19, 2010, Ball tried to accept the Stay Agreement.  GECDF then made a new proposition: Ball would have to pay $8,000 by July 23, 2010, and a new Stay Agreement would be created.  Ball's response did not come until July 29, 2010, when he indicated that he had signed the original Stay Agreement and had a check for only $2,000.  At that point, GECDF sought to begin negotiations on a forbearance agreement, as discussed above.  Clearly, there was never a meeting of the minds on any version of the Stay Agreement.

3

execution." While the July 29, 2010, email mentioned an initial $2,000 payment and "continued $2,000 payments," crucial terms (i.e., the duration and conditions of the payments) were still missing from the email. On August 4, 2010, GECDF's counsel stated via email that she would need to "discuss this further with GECDF and get more specifics on terms that would be acceptable. I assume that so long as $2,000 monthly payments are made, GECDF would agree not to enforce any judgment, but I will confirm that with you. If that is the case, we will draft a new agreement for your client's signature." The next day, GECDF's counsel emailed Ball's counsel and said that GECDF had decided "to confirm the arbitration award and terminate any settlement negotiations."

Under Georgia law, "[i]t is well established that no contract exists until all essential terms have been agreed to, and the failure to agree to even one essential term means that there is no agreement to be enforced. If a contract fails to establish an essential term, and leaves the settling of that term to be agreed upon later by the parties to the contract, the contract is deemed an unenforceable 'agreement to agree.'" Kreimer v. Kreimer, 552 S.E.2d 826, 829 (Ga. 2001) (quotations omitted). In this case, the parties had, at most, an agreement to agree on the terms of the forbearance. The parties never agreed on how long Ball would have to make payments or what other conditions he would need to meet in order

4

for GECDF to ensure payment of the arbitration award. Although GECDF's counsel later suggested that continuous $2,000 payments would be satisfactory, she specifically conditioned that on receiving approval from GECDF; and in any event, she emailed the next day to state that GECDF had declined to make such an offer. Because there was never a meeting of the minds on the specific terms of any forbearance agreement, we agree with the district court that there was no enforceable contract. See O.C.G.A. § 13-3-1; id. § 13-3-2.

**AFFIRMED.**